### LEONARD OTTINGER V. STATE.

No. 25186. June 27, 1951.
Rehearing Denied October 17, 1951.

■■■■■■■■■■■■■■■■■■■■■■■■■■

Hon. H. D. Barrow, Judge Presiding.

■■■■■■■■■

*Frank W. Steinle,* Jourdanton, for appellant.

*John F. May,* District Attorney, Karnes City, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

Upon original disposition of this case under the evidence then before us by way of affidavits, we reeached the conclusion that appellant had been, without fault upon his part, unjustly deprived of a statement of facts and, for that reason, reversed the judgment and remanded the case for a new trial.

Upon considering the state's motion for rehearing, and under the evidence there presented by way of affidavits, we reached the conclusion that the absence of a statement of facts was attributable to the fault and laches of the appellant and his counsel, and granted the state's motion for rehearing and affirmed the judgment of conviction because no statement of facts was before this court.

Accompanying appellant's motion are additional affidavits. In addition thereto, a statement of facts adduced upon the trial of the case and duly certified and approved by the trial court is before this court with the request of the trial judge that it be considered by this court. Such statement of facts shows to have been agreed to as correct by counsel for both parties.

In view of the facts as a whole, we are constrained to agree that the statement of facts should be considered by this court. Consequently, all former opinions delivered herein are now withdrawn, and the following substituted in lieu thereof:

For the murder of Onesimo Martinez, appellant has been convicted, with punishment assessed at eight years in the penitentiary.

Appellant operated, upon premises under his control, a small, or short, race track of the kind commonly known as the

"quarter horse" variety. Any one desiring to race his horses would bring them to the track and make or match races to be run. On the occasion of the killing, the father of deceased and several of his brothers brought their horses to the track for racing. A race was arranged between the horses of Rosindo Martinez, a brother of deceased, and L. B. Jordan, each of them betting a small amount on the outcome. Each entrant rode his own horse, and Jordan's horse won the race.

Appellant, who, with others, witnessed the race, came to the conclusion that it had not been fairly conducted, in that Martinez not only did not give his horse a fair start but also "pulled" the horse so as to prevent or interfere with his winning. Thereupon, appellant, as the owner and operator of the track, ordered the race cancelled or declared "no race." Appellant justified this interference and order by saying that he did not countenance or permit races at his track which were unfairly raced. Of this attitude on the part of appellant, the respective parties to the race were aware before the race was run.

As a result of this interference by appellant, a difficulty ensued between the members of the Martinez family and the appellant. The deceased, a brother of Rosindo Martinez, was not a participant in the race, nor does it appear that he had bet thereon.

It would serve no useful purpose, especially in the light of the record before us, to detail the facts showing the killing. From the state's standpoint, appellant shot and killed the deceased without justification or excuse; from that of the appellant, it was a killing in self-defense from the actual attack of deceased and his brothers.

All issues of fact arising were pertinently submitted by the trial court in his charge, and no exception or objection was levelled thereto.

The witness Myers testified in behalf of appellant and corroborated his version as to the unfair manner in which the race had been run. According to the testimony of this witness, appellant apprehended him after the race and asked him what he thought about the race—to which witness replied: "Well, they pulled that horse." Appellant remarked: "Well, that is what I thought . . . I am going to go down there and tell them to take their horses and leave the track." The witness then accompanied

appellant to the place where the members of Martinez's family were gathered. He corroborated appellant as to the start of the difficulty. The witness Myers, however, testified he did not see the participants when the first shot was fired, as he was some distance away. Upon hearing the shot, Myers asked those near him: "What is that?" Williams, who was standing near by, replied: "You know what that was? . . . That man shot *them* boys." Following this statement, other shots were fired.

To the statement of Williams above quoted, appellant objected that it was an expression of a conclusion by the witness, and hearsay. The trial court overruled the objection and in so doing, stated to appellant's counsel that the statement was a part of the res gestae.

The statement was a part of the res gestae of the transaction, and the trial court did not err in overruling the objection. Sections 200 and 201, 18 Tex. Jur., pp. 325, 326. Moreover, there was no controversy over the fact that appellant shot the deceased. Such was admitted.

In connection with the foregoing ruling, appellant objected to the trial court's stating his reason for overruling the objection and that the statement was a part of the res gestae, the ground of objection being that such remark was a comment on the weight of the evidence.

With this contention we do not agree. We know of no ruling by which it can be said that the trial court was not authorized to give as his reason for overruling the objection the fact that the testimony to which objection had been made was a part of the res gestae.

The remaining bill of exception is overruled without discussion.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING.

MORRISON, Judge.

Appellant again directs our attention to his Bills of Exception Nos. 1 and 2. The first bill complains that one Myers was

permitted, on cross-examination by the state, to testify to a remark made by one Williams concerning the shooting at the time the shots were being fired.

Appellant contends that since Myers and Williams were both approximately one hundred and twenty-five yards from the point where the deceased was shot at the time of the making of such remark and did not see or hear the appellant or deceased immediately prior to the shooting, that any remark they may have made could not have been part of the res gestae. This contention we find in appellant's brief but find no recitation or certificate in the bill itself to support the same. For a bill to present reversible error, it must disclose all the matters necessary to manifest error and to overcome the presumption that the trial court ruled correctly, and we are not called upon, nor may we look to the record to complete the bill. We are not to be considered as holding the remarks inadmissible but are merely holding that the bill itself reflects no error.

Bill of Exception No. 2 complains that the trial court, during the course of his ruling on appellant's objection to the remarks detailed in Bill No. 1 hereof, said, "Why, Mr. Steinle, it is a part of the res gestae." Appellant contends that the use of the words "res gestae" conveyed the impression to the jury that the trial court attached great importance to the testimony which he had just ruled admissible. With this contention we cannot agree. In Mason v. State, 74 Tex. Cr. R. 256, 168 S.W. 115, the trial court, in ruling on an objection, said: "I think this is part of the res gestae." We held this not to be upon the weight of the evidence and hence not error.

Appellant's motion for rehearing is overruled.